IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JACKSON & PERKINS WHOLESALE,                    Civil No. 03-3091-CO
INC.,
                                        FINDINGS AND RECOMMENDATION
            Plaintiff,

        v.

SMITH ROSE NURSERY, INC.; et al.

            Defendants.


COONEY, Magistrate Judge:

        This action arises out of a written agreement between the parties for

the purchase by defendants of certain rose varieties from plaintiff.  Following

a stipulated permanent injunction which resolves the third through seventh

claims alleged in plaintiff's amended complaint (#128, #130), plaintiff's

claims for sums owing due to breach of contract against defendant Smith

Rose Nursery, Inc., and for enforcement of personal guarantees against

defendants Calvin Smith and Melvin Smith, remain pending.  Plaintiff seeks

monetary damages in the amount of $555,055.21 as of August 4, 2003, plus

interest, and attorneys' fees, as to those claims. Defendants have filed a counterclaim for breach of contract, anticipatory breach or repudiation, and fraud, and a counterclaim for attorneys' fees. Defendants pray for damages not to exceed $1,000,000 plus interest, and attorneys' fees. This court has jurisdiction pursuant to 28 U.S.C. § 1332. Before the Court are plaintiff's motion for partial summary judgment (#77) and defendants' motion for summary judgment (#132).

## I.  **FACTS**

The Court makes the following findings of fact, considering the evidence in the light most favorable to the non-moving party[1]:

Plaintiff Jackson & Perkins Wholesale, Inc., is a Delaware corporation with its principal office and place of business in Jackson County, Oregon. Defendant Smith Rose Nursery, Inc. (Smith Rose), is a Florida corporation. Plaintiff and defendant Smith Rose entered into a contract (Agreement). (Compl. ¶¶ 1 and 2 & Ex. A; Am. Suppl. Answer and Countercls. ¶ 1; Vanderhoof Aff. Ex. 1.) The original Agreement was originally drafted by

---

[1] A party may not rely on its own pleadings in support of its position on summary judgment. In the undisputed facts set forth by the Court, where a party's pleading is cited in support of the undisputed fact, the proposing party relied on the opposing party's pleading or the opposing party admitted the proposed fact.

Robert Bluth,[2] but was revised through negotiations with defendants' attorneys.  (Defs. Ex. J Bluth Dep. at 4, 10-12.)

Defendants Calvin J. Smith and Melvin W. Smith are individuals who personally guaranteed the indebtedness owing from defendant Smith Rose to plaintiff.  (Compl. ¶ 1;   Am. Suppl. Answer and Countercls. ¶ 1.) Defendants Calvin Smith and Melvin Smith are both shareholders in Smith Rose.  (Vanderhoof Aff. Attach. Calvin Smith Dep. at 6.)  Defendant Calvin Smith owns 51 percent of the shares.  (Vanderhoof Aff. Attach. Calvin Smith Dep. at 6.)   Defendant Melvin Smith owns 49 percent of the shares. (Vanderhoof Aff. Attach. Calvin Smith Dep. at 20.)

Pursuant to the Agreement, plaintiff was to provide rose varieties grown on Fortuniana rootstock to defendants. ( Am. Suppl. Answer and Countercls. ¶ 9.)

Defendants agreed to purchase at least 120,000 units of roses each year during the contract.  (Calvin Smith Aff. ¶ 3.)

Plaintiff agreed to provide defendants with 13 week old plants.  (Calvin Smith Aff. ¶ 3; Anderson Aff. ¶ 7; Pl. Ex. 3; Defs. Ex. I.)

Plaintiff sold approximately 153,000 plants to defendants in 2002.

---

[2] Robert Bluth is Senior Vice President and general counsel for plaintiff.  (Bluth Aff. ¶ 2.)

Defendants allege 55,000 of the 153,000 plants that were delivered were defective due to "downey mildew." (Am. Suppl. Answer and Countercls. ¶ 17; Vanderhoof Aff. Attach. Calvin Smith Dep. at 44, 75.)

In October 2002, Charles Anderson, the Senior Vice President for plaintiff, had the director of plaintiffs Shadehouse Operations, Humberto Sanchez, visit the defendants' facility to determine the cause of the losses of plants that were received from plaintiff. (Anderson Aff. ¶ 7.) Mr. Sanchez concluded the quality and grade of plant was not the cause of the losses. (Anderson Aff. ¶ 7 & Ex. 3 at 2.) Mr. Sanchez made the following conclusions:

> The primary issue that has resulted major losses of these grafted roses is how the plants were received and held in Smith's Nursery. The plants were placed on a cell and carrying tray that totally restricted the draining of water. With temperatures exceeding 85 deg during the day made the situation even worst [sic]. Smith's Nursery was not ready to receive these amounts. When we deal with green sensitive plants, we should let such plants recover from any stress. Plants that have been transported to another location or region must have a period of recovery and adapt to new climate. Avoid plants from direct sunlight, put plants under some shade and understand the needs and amounts of moisture required. Be very sensitive to hot chemicals that can burn leave [sic] tissue and avoid heavy fertilization. Drench root system with a fungicide to prevent root rot and apply with an immediate systemic fungicide to prevent from any downy/ black spot break out.
>
> The second issue is the growers' irrigation practices. Is difficult to rule out the process of irrigating properly. Even though the

plants have moisture when you visit. It has been my experience that a plant that is recently planted on a container or the field must be irrigated until all air is out of the soil. The hand irrigation must be done immediately after a plant is potted regardless of temperature or auto irrigation system. This is where a grower must not let the auto system take over the process. There is a period of special care that starts from the time of potting through the time of recovery it usually takes 1-10 days. It's eminent to monitor moisture, disease and the care of a plant.  The plants that are not watered in this order may result of irregular growing or die back of some plants.

The third issue is the transit stress. The transit period, the temperature variances, the packaging and climate are all causes for plant stress. Seven days is the max number of days for the summer graft to put through transit from the time a plant is put in a box until that plant is unpacked. This period is based on this experience. The preferred time should not exceed 4 days for summer grafts. The longer the transit period the higher the risk for botrytis, increased levels of ethylene and fungus molds, more so if temperatures fluctuate.

Smith Nursery is not ready to start the grafting program unless they hire a propagator and build the appropriate growing facility.

The quality and grade of the plant is not an issue.

(Anderson Aff. ¶ 7 & Ex. 3 at 2.)

Throughout February 2003, Charles Anderson exchanged e-mails and had telephone conversations with defendant Calvin Smith.  The goal of these conversations was to make the contractual relationship between the parties successful.  (Anderson Aff. ¶¶ 2 & 3.)

Defendants' previous lawyers sent Mr. Bluth a letter by telecopier dated

July 18, 2003. The telecopier cover sheet includes a "Description of transmittal" which refers to the parties' "proposed Settlement Agreement." Attached to the telecopier cover sheet sent to Mr. Bluth was a letter dated July 18, 2003, from Calvin Smith to defendants' lawyers referring to a "Proposed Settlement." (Bluth Aff. ¶ 3 & Ex. 1.)

A draft of a written settlement agreement between plaintiff and defendants provided that plaintiff was to provide defendants with excess units for the following three years at no charge. (Calvin Smith Aff. ¶ 3; Anderson Aff. ¶¶ 3-7; Bluth Aff. Ex. 1; Defs. Ex. F.)

Sometime after May 2003, the parties ceased to discuss settling the dispute. (Anderson Aff. ¶ 6.)

On or about July 21, 2003, plaintiff, through Robert Bluth, sent a letter to defendant Calvin Smith giving notice of termination of the August 1, 2002, Agreement. (Vanderhoof Aff. Ex. 2; Vanderhoof Aff. Attach. Calvin Smith Dep. at 129 and Dep. Ex. 9; Calvin Smith Aff. ¶ 4; Bluth Aff. ¶ 4 & Ex. 2; Melvin Smith Aff. ¶ 9; Anderson Aff. ¶ 6.)

Since commencement of the lawsuit, defendants paid plaintiff on November 25, 2003, the sum of $330,000 for product that Smith Rose had no objection to. (Am. Suppl. Answer and Countercls. ¶ 7; Vanderhoof Aff. Attach. Calvin Smith Dep. at 126-27; Anderson Aff. ¶¶ 3, 4, 6; Defs. Ex. C

Calvin Smith Dep. at 133-34.)

Defendants claim damages for repudiation of the Agreement for lost profits and incidental damages in an amount in excess of one million dollars. (Am. Suppl. Answer and Countercls. ¶¶ 19, 26.) The Agreement between the parties contained limitation of damages clauses. The clauses state:

> [Plaintiff] JPW warrants that the plants purchased are viable at the time of shipment. Written notice of any claim should be sent to JPW's Customer Service Department, Post Office Box 9100, Medford, Oregon 97501, to be evaluated for refund, credit or replacement. If a claim is approved, JPW will replace any plants determined not to be viable at the original delivery point, or at the option of JPW; refund or issue credit for the purchase price of the non-viable plants. JPW is not responsible for the product after it has leafed out. Viability after leafing out is the responsibility of [defendant Smith Rose] SMITH. JPW makes no warranties, expressed or implied, other than those expressly set forth herein. JPW disclaims all other warranties including, but not limited to, implied warranties of merchantability or fitness for any particular purpose. The remedies listed in these Terms and Conditions shall be the sole remedies available to the customer. Damages (including consequential damages) are excluded and the remedies provided herein are not cumulative of other remedies provided by the Uniform Commercial Code.
> . . . .
> JPW shall have no liability to SMITH for any claims or expenses arising from expiration or termination of this Agreement including claims for lost profits or lost business opportunities.

(Vanderhoof Aff. Ex. 1 ¶¶ 6, 19.)

Defendants agree that, pursuant to contract terms, paragraph 6 of the

Agreement limits Smith Rose's remedy for defective products delivered to replacement plants, or a credit, or refund.  (Vanderhoof Aff. Attach. Calvin Smith Dep. at 119-20; Vanderhoof Aff. Attach. Melvin Smith Dep. at 34-35.)

Paragraph 6 of the Agreement between the parties provided that plaintiff warranted that the plants would be viable at the time of shipment. (Vanderhoof Aff. Ex. 1.)  The Agreement further provided that delivery of the product ". . . shall be FOB, [plaintiff's] facility in Wasco, California." (Vanderhoof Aff. Ex. 1 ¶ 20.)

## II.  LEGAL STANDARDS

A moving party is entitled to summary judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact . . . ."  Fed. R. Civ. P. 56(c); Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002).  The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact.  Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002).

The moving party must carry the initial burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).  The moving party meets this burden by identifying for the court portions of the record on file which demonstrate

Findings and Recommendation - Page 8

the absence of any genuine issue of material fact.  Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party.  Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995).  All reasonable inferences are drawn in favor of the non-movant.  Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002), cert. denied, 537 U.S. 1106 (2003).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n.4 (1986).  If the moving party presents evidence which, taken by itself, would establish the right to a directed verdict at trial, the motion for summary judgment must be granted, in the absence of any significant probative evidence tending to support the opposing party's theory of the case.  THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d 991, 993-94 (9th Cir. 1980); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968).  Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposing party must, by

affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial.  <u>Devereaux</u>, 263 F.3d at 1076.

### III.  <u>DISCUSSION</u>

### <u>Plaintiff's motion for partial summary judgment</u>

<u>Counterclaims for lost profits and incidental damages</u>

Plaintiff moves for summary judgment as to defendant Smith Rose's counterclaims for lost profits and incidental damages on the ground that the Agreement[3] between the parties in paragraphs 6 and 19 specifically limits defendants' remedy to replacement plants, a credit or a refund, and excludes consequential damages.  Plaintiff contends that, if Smith Rose is able to prove its counterclaims, its remedies are limited to a refund, a credit, or replacement plants.  Defendant responds that the contractual remedy for defective roses failed or was inadequate because of plaintiff's breach. Defendants contend that, after the parties became aware of the nonviable roses sold and shipped, they entered into a Settlement Agreement on February 3, 2003, whereby plaintiff was to provide certain replacement roses, certain credits, and delay in payment.  They contend that plaintiff breached this Settlement Agreement by failing to ship the replacement roses as agreed,

---

[3] The Court will refer to the written agreement between the parties of August 2002 as the "Agreement," and the alleged settlement agreement as the "Settlement Agreement."

Findings and Recommendation - Page 10

and by making new and additional demands, which terms had not been part of the Settlement Agreement. Defendants contend that, because plaintiff failed to perform the replacement remedy, the contractual limitations of remedies are not enforceable. Defendant contends that there is a factual issue whether the alleged breach by plaintiff prevented the performance of the limited remedy set forth in the contract. Plaintiff replies that defendant does not dispute that the Agreement limits damages, and contends that the limitation of remedies clause, paragraph 6, is enforceable because the Agreement does not limit remedies to only replacement roses, but provides separate remedies including a refund or a credit. Because additional remedies are provided, plaintiff contends that the Agreement did not fail of its essential purpose. Plaintiff contends that the limitations of consequential damages clause is independently enforceable, and defendants do not argue it is unconscionable.

In count I of their first counterclaim, defendants allege that plaintiff breached the original Agreement by failing to provide proper plants to defendants. Defendants allege that they suffered damages in the form of lost profits in excess of $1,000,000, and have incurred incidental damages in attempting to minimize the damage caused by plaintiff's breach and repudiation. In count II of their first counterclaim, defendants allege that,

after they received immature and nonviable plants, the parties entered into

another agreement whereby plaintiff would provide various credits and ship

new plants from their excess plants to replace the plants initially received.

Defendants allege that plaintiff did not plant enough plants so there was no

excess plants, and plaintiff entered into the February 2003 agreement fully

aware it never intended to honor its initial contract or any subsequent

contract with defendants, which was an anticipatory breach or repudiation.

Defendants allege that they suffered damage to their business's financial well-

being in the sum of $1,000,000.

Oregon's Uniform Commercial Code-Sales (UCC) provides that remedies

may be limited by the parties:

> (1) Subject to the provisions of subsections (2) and (3) of this section and of ORS 72.7180 on liquidation and limitations of damages:
> (a) The agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and
> (b) Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
> (2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in the Uniform Commercial Code.
> (3)  Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.  Limitation

of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

ORS 72.7190.

Here, the Agreement between the parties provided in pertinent part:

JPW warrants that the plants purchased are viable at the time of shipment. Written notice of any claim should be sent to JPW's Customer Service Department, Post Office Box 9100, Medford, Oregon 97501, to be evaluated for refund, credit or replacement. If a claim is approved, JPW will replace any plants determined not to be viable at the original delivery point, or at the option of JPW; refund or issue credit for the purchase price of the non-viable plants. JPW is not responsible for the product after it has leafed out. Viability after leafing out is the responsibility of SMITH. JPW makes no warranties, expressed or implied, other than those expressly set forth herein. JPW disclaims all other warranties including, but not limited to, implied warranties of merchantability or fitness for any particular purpose. The remedies listed in these Terms and Conditions shall be the sole remedies available to the customer. Damages (including consequential damages) are excluded and the remedies provided herein are not cumulative of other remedies provided by the Uniform Commercial Code.

(Vanderhoof Aff. Ex. 1 ¶ 6.)

According to its terms, the Agreement between the parties provided that, in the event of a claim relating to plaintiff's warranty, the sole remedies available to defendants are "refund, credit or replacement," that is, replacement of plants determined not to be viable or, at the option of plaintiff, a refund or issuance of credit for the purchase price of the nonviable

plants.  (Vanderhoof Aff. Ex. 1 ¶ 6.)  Paragraph 6 of the Agreement provides that the remedies provided therein are not cumulative of other remedies provided by the Uniform Commercial Code.

Relying on ORS 72.7190(2), supra, and Young v. Hessel Tractor & Equip. Co., 99 Or. App. 262, 266-67 (1989), defendants argue that limitations of remedies are not enforceable where there is a failure on the part of the seller to perform the replacement remedy.  Defendants contend that a factual issue for the jury exists as to whether plaintiff's breach prevented the performance of this limited remedy.

It appears from defendants' brief and argument made at the hearing on the parties' motions that defendants' opposition to plaintiff's first motion concerns only the replacement remedy allegedly agreed to in the Settlement Agreement.  The record indicates that any Settlement Agreement between the parties was to correct alleged failures in performance of the first year under the Agreement.  Defendants point to no signed writing which would have modified the original Agreement.  (See Vanderhoof Aff. Ex. 1 ¶ 29.) Therefore, on this record, inasmuch as the Settlement Agreement addressed problems in performance of the Agreement and the Settlement Agreement, as represented in the record, includes no new remedy to those provided in the Agreement, the Court will refer to the original Agreement between the

parties as to the available remedies.

The Oregon Court of Appeals has found that, "If the jury finds that a buyer limited his remedies in a sales contract and then lost the substantial value of the bargain when the limited remedy failed, the remedy has failed of its essential purpose." Young, 99 Or. App. at 267 (citing ORS 72.7190 cmt. 1). In Young, the Court of Appeals found that, to prove failure of essential purpose of a repair and replacement remedy, the buyer must first show that the seller was either unwilling or unable to repair. Id. at 267. The court determined that, once plaintiff proved to the jury that he lost the benefit of his bargain because his limited remedy of repair or replacement was not minimally adequate, then the revocation of acceptance remedy sought by him was available. Id. The court stated:

> If the jury finds that the equipment was defective and that defendant was unable to repair the defect or replace the defective parts, then the express warranty to repair or replace parts was breached. If the jury finds that the defect was a substantial nonconformity under the contract, that plaintiff reasonably assumed that the nonconformity would be cured and that it was not seasonably cured, then the jury may conclude that plaintiff was entitled to revocation of acceptance under ORS 72.6080 [defining revocation of acceptance].

Young, 99 Or. App. at 268.

In contrast to Young, the limited remedies available to defendants upon a breach of the warranty that the plants were viable at the time of shipment,

Findings and Recommendation - Page 15

included, in addition to the remedy of replacement, the remedies of a refund

or issuance of a credit.  (Vanderhoof Aff. Ex. 1.)  Defendants argue only that

the replacement remedy failed of its essential purpose, and do not show that

the alternative remedies of refund or credit are not minimally adequate

remedies,[4] such that they may resort to a remedy under the UCC.

Accordingly, the Court finds that defendants fail to raise a genuine issue of

material fact for trial as to whether the limited remedies failed of their

essential purpose so that defendants could resort to other UCC remedies.

Young, 99 Or. App. at 267, 268; see Marr Enters., Inc. v. Lewis Refrigeration

Co., 556 F.2d 951, 955 (9th Cir. 1977); see also Arcata Graphics Co. v.

Heidelberg Harris, Inc., 874 S.W.2d 15, 28-29 (Tenn. Ct. App. 1993).

Plaintiff also contends in its motion that the parties' limitation of

damages clauses included in the Agreement should be enforced as written.

In its reply and at oral argument of the parties' motions, plaintiff argued that

the limitations of consequential damages clause is independently enforceable.

Defendants have not addressed this argument.

The District of Oregon has found that clause (3) of ORS 72.7190,

supra, relating to limitation or exclusion of consequential damages, means

---

[4] Plaintiff represents in its papers and expressed at the hearing that, if it is shown
that the replacement remedy failed, it remains willing to refund or credit the amount.

that, generally, "the UCC allows sellers to disclaim liability for consequential damages, as long as any disclaimer is limited to economic losses." <u>Starr v. Dow Agrosciences LLC</u>, 339 F. Supp.2d 1097, 1101 (D. Or. 2004). Consequential damages are defined in the UCC as follows:  "(a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and (b) Injury to person or property proximately resulting from any breach of warranty."   ORS 72.7150(2).

Here, paragraph 6 of the Agreement provided that, in addition to the limited remedies of replacement, refund, or credit discussed above, "Damages (including consequential damages) are excluded."  (Vanderhoof Aff. Ex. 1 ¶ 6.)  A provision excluding consequential damages[5] is permitted by the UCC, and defendants do not argue that the provision is unconscionable.  <u>See</u> ORS 72.7190(2).

The Court agrees with plaintiff that the exclusion of consequential damages clause in paragraph 6 is separate from the clause limiting remedies

---

[5] Although the language of paragraph 6 appears to exclude all damages, the Court understands from plaintiff's arguments as they relate to paragraph 6 that it seeks only to enforce the exclusion of consequential damages.  <u>See</u> ORS 72.3160(4) (remedies for breach of warranty may be limited pursuant to ORS 72.7180 on liquidation or limitation of damages and ORS 72.7190 on contractual modification of remedy).

to replacement, refund, or credit, and should be enforced.  See Util. Equip., Inc. v. Morbark Indus., Inc., 308 Or. 209, 216-17 (1989) (warranty provision excluding liability for consequential damages barred claims for implied warranty and negligence); Starr, 339 F. Supp.2d at 1101-02 (contract terms did not permit recovery of consequential loss arising from breach of warranty); Am. Elec. Power Co. v. Westinghouse Elec. Corp., 418 F. Supp. 435, 454-56, 457-59 (S.D.N.Y. 1976) (provision limiting liability such that consequential damages could not be recovered separate from warranty to repair or replace provision given effect; summary judgment precluding recovery of consequential damages granted).  Defendants make no argument on this issue and fail to raise a genuine issue of material fact on this issue.

Plaintiff also relies on paragraph 19 of the Agreement in arguing that defendants' counterclaims preclude damages for lost profits or lost business opportunities.  Paragraph 19 of the Agreement between the parties provided that:  "JPW shall have no liability to SMITH for any claims or expenses arising from expiration or termination of this Agreement including claims for lost profits or lost business opportunities."  (Vanderhoof Aff. Ex. 1 ¶ 19.)  By its terms, paragraph 19 limited liability for claims or expenses "arising from expiration or termination" of the Agreement.  A review of defendants' counterclaims indicates that they do not seek damages for expiration or

termination of the Agreement and, therefore, it does not appear that paragraph 19 has any application to plaintiff's first motion.

On the record before it, the Court finds that plaintiff sustains its burden on summary judgment as to its first motion, and that defendants fail to raise a genuine issue of material fact as to their contention that the limited remedies provided in the Agreement failed of their essential purpose so as to preclude summary judgment in plaintiff's favor on this issue. Nor do defendants raise a genuine issue as to plaintiff's contention that consequential damages are excluded as a remedy. Plaintiff's position on summary judgment is that, if Smith Rose is able to prove its counterclaims, its remedies are limited to a refund, a credit, or replacement plants. Accordingly, in the present posture of the case as shown on this summary judgment record and for purposes of summary judgment only, where defendants have not shown failure of essential purpose of the remedies provided in the Agreement, plaintiff's motion for partial summary judgment, motion one, as to the damages sought by defendants in their counterclaims should be granted.

Counterclaims (Counts 1 and 2 to the extent the alleged damages were caused or sustained after or during transport from plaintiff's facility

Plaintiff moves for summary judgment as to defendant Smith Rose's

counterclaims, counts 1 and 2, to the extent that defendants seek damages and offsets for defects or damages to the plants that occurred in shipment or thereafter, on the ground that, pursuant to the Agreement, the parties agreed that delivery of all products would be "FOB" at plaintiff's facility in Wasco, California, and that plaintiff would only warrant that the plants would be viable at the time of shipment.  Defendants respond that there is a disputed factual issue whether the damages to the roses shipped by plaintiff were the result of nonviable plants being shipped.  Defendants contend that the damages sought are for roses that were defective at the time of shipment, and there is evidence that the roses were defective before they were shipped because of their immaturity.  Plaintiff replies that, by defendants' argument, it appears that they implicitly concede that, to the extent the alleged damages were caused in shipment or thereafter, plaintiff is entitled to judgment as a matter of law.

It is clear on the record that a genuine issue of material fact exists as to whether the plants shipped by plaintiff were viable at the time of the shipment and, if the plants were defective, whether they were defective at the time of shipment, or were damaged during shipment or thereafter.  (See Calvin Smith Aff. ¶ 3; Anderson Aff. ¶ 7 & Ex. 3; Defs. Ex. F.)  The Court finds that, until the facts are determined by the trier of fact, plaintiff's motion on

this issue is speculative.  Accordingly,  plaintiff's motion for partial summary judgment, motion two, as to alleged damages occurring during or after transport, should be denied.

Defendants' breach of Agreement for selling produce to plaintiff's customers serviced by Calvin Smith in his capacity as plaintiff's sales representative

Plaintiff concedes in its reply brief that its third motion cannot be decided on summary judgment.

**Defendants' motion for summary judgment**

Counterclaim for breach of contract

Defendants contend that the plants purchased pursuant to the Agreement between the parties were not viable at the time of shipment because they were too young when they were shipped and received, thereby constituting a material breach, since it went to the substance of the Agreement.  They contend that the amount of damages should be determined at trial.  Plaintiff responds that defendants' motion should be denied because genuine issues of material fact exist which precludes judgment as a matter of law in favor of defendants.  Plaintiff contends that it did not ship nonviable plants, and evidence exists that the quality and grade of the plants were not the cause of the losses.  Defendants reply that plaintiff's contravention of facts does not necessarily preclude a grant of

summary judgment in their favor, because plaintiff's facts have not been shown to be material facts or facts that would entitle it to a jury verdict in its favor.

As discussed, <u>supra</u>, a genuine issue of fact exists as to whether the plants shipped by plaintiff were viable at the time of shipment, as warranted. (<u>See</u> Calvin Smith Aff. ¶ 3; Anderson Aff. ¶ 7 & Ex. 3; Defs. Ex. F Draft Settlement Agreement.)    This issue of fact is material to defendants' counterclaim.   Defendants acknowledged at the hearing on the parties' motions that they may have made misstatements regarding the law on materiality of facts.  Defendants admitted at the hearing that, if the Court finds the plaintiff's affidavits in response to their motion were sufficient, then summary judgment cannot be granted.  The Court finds that plaintiff offers evidence which raises a genuine issue material fact as to whether plaintiff breached the Agreement by shipping nonviable plants, and defendant's motion for summary judgment as to its counterclaim for breach of the Agreement should be denied.

<u>Counterclaim for anticipatory breach/repudiation</u>

Defendants contend that plaintiff breached and/or repudiated both the Agreement and the Settlement Agreement between the parties.  They contend that the Settlement Agreement modified the original Agreement

between the parties, following the failure of the Fortuniana rose crop sent by plaintiff, and that plaintiff did not perform the terms of the settlement. Defendants contend that plaintiff's failures is likely due to the fact that it never planted enough crop to fully comply with the terms of the Agreement. They contend that the amount of damages on their counterclaims for anticipatory breach/repudiation should be determined at trial. Plaintiff responds that defendants' motion should be denied because genuine issues of material fact exist which precludes judgment as a matter of law in favor of defendants. Plaintiff contends that an issue of fact exists as to whether the parties entered into an enforceable "settlement agreement." It contends that, even if there are not issues of fact as to whether the parties entered into a settlement agreement, defendants failed to follow through with their part of the bargain by failing to pay approximately $343,000 for plants already provided and were not in dispute, which was finally paid on November 25, 2004, after this lawsuit was filed. Plaintiff contends that a Settlement Agreement was not signed by either party and, therefore, there was no modification of the terms of the original Agreement. Defendants reply that plaintiff's contravention of facts does not necessarily preclude a grant of summary judgment in their favor, because plaintiff's facts have not been shown to be material facts or facts that would entitle it to a jury verdict in its

favor.

It is clear on the record that a genuine issue of fact exists as to whether the parties entered into a Settlement Agreement.  (See Calvin Smith Aff. ¶¶ 3-6; Defs. Ex. H Melvin Smith Aff. ¶¶ 4-5; Anderson Aff. ¶¶ 2-6 & Ex. 3; Bluth Aff. ¶ 3 & Ex. 1; Defs. Ex. F.)    This issue of fact is material to defendants' counterclaim.  Defendants acknowledged at the hearing on the parties' motions that they may have made misstatements regarding the law on materiality of facts.  Defendants admitted at the hearing that, if the Court finds the plaintiff's affidavits in response to their motion were sufficient, then summary judgment cannot be granted.  The Court finds that plaintiff offers evidence which raises a genuine issue material fact as to whether a Settlement Agreement was entered into by the parties, and defendant's motion for summary judgment as to its counterclaim for  breach / repudiation of the Settlement Agreement should be denied.

Counterclaim for fraud (in the inducement)

Defendants contend that defendant Calvin Smith was employed as a sales representative for plaintiff and, to induce defendants into entering into the Agreement, plaintiff assured defendants that there would be no conflict of interest if he were a salesman for plaintiff and also sold roses through his company, defendant Smith Rose.  They contend that defendant Calvin Smith

was terminated, and plaintiff claimed that it could not be held to the terms of the Agreement because it had been breached by a conflict of interest-- defendant Calvin Smith's ownership at Smith Rose and selling roses concurrently with his employment by plaintiff. Defendants contend that the issue of conflict was raised only as a pretext for avoiding its obligations under the Agreement. Defendants contend that, because of plaintiff's fraud, their remedies are not limited to the contractual remedies provided in the Agreement, since the contract failed. They contend that they are entitled to damages which should be determined at trial. Plaintiff responds that defendants' motion should be denied because genuine issues of material fact exist which precludes judgment as a matter of law in favor of defendants. Plaintiff contends that defendants' arguments concerning fraud are not supported by the record, and their concise statement of facts does not address any element of fraud. Plaintiff contends that, even if defendants supported their motion, the extent to which a representation is misleading so as to impose a duty of disclosure is a question of fact. Plaintiff contends that an issue of fact exists regarding the reason the Agreement was terminated. Defendants reply that plaintiff's contravention of facts does not necessarily preclude a grant of summary judgment in their favor, because plaintiff's facts have not been shown to be material facts or facts that would entitle it to a

jury verdict in its favor.

The Court has reviewed defendants' concise statement offered in support of their motion for summary judgment. The Court agrees with plaintiff that defendants fail to sustain their burden on summary judgment by offering facts and evidence in their concise statement of facts in support of their counterclaim for fraud. Although defendants cite evidence in their motion in support of their position, such a presentation does not provide plaintiff or the Court the opportunity to know which undisputed facts defendants propose are essential to summary judgment in their favor. See Local Rule 56.1(a)(2). The Court has no independent duty to search, or to consider, any part of the record not referenced in the parties' concise statements of fact. Local Rule 56.1(e). Accordingly, defendants' motion for summary judgment as to its counterclaim for fraud should be denied.

## V. **RECOMMENDATION**

Based on the foregoing, it is recommended that plaintiff's motion for partial summary judgment (#77) be granted in part and denied in part, as stated, and that defendants' motion for summary judgment (#132) be denied.

**This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of**

Findings and Recommendation - Page 26

appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.  **The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the court.  Thereafter, the parties have ten days within which to file a response to the objections.**  Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this _22__ day of September, 2006.

_____/s/_____
UNITED STATES MAGISTRATE JUDGE